UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
MICHAEL MURPHY,

                  Plaintiff,

-against-

WAPPINGERS CENTRAL SCHOOL DISTRICT;
CATHERINE DEFAZIO as Head Custodian of Van
Wyck Junior High School and Individually,
THOMAS GIORNO as Head Custodian of Van
Wyck Junior High School and Individually,
JOANNE SEREDA as Director of Human
Resources/Title IX Coordinator and Individually, and
RONALD BROAS as Director of Facilities and
Operations and Individually, for aider and abetter
liability,

                  Defendants.

-------------------------------------------------------------------------X

Civil Action No.: *15-CV-07460*

VERIFIED COMPLAINT

Electronically Filed

    Plaintiff Michael Murphy, by and through his attorneys, Jacobowitz & Gubits, LLP, hereby complains of the Defendants as follows:

## **THE PARTIES**

    1.    At all relevant times herein, Plaintiff maintained a residence in the Town of Pleasant Valley, County of Dutchess, State of New York.

    2.    Upon information and belief, Defendant Wappingers Central School District (hereinafter the "District") is an employer, as that term is defined in Title VII of the Civil Rights Act of 1964, with fifteen (15) or more employees.

    3.    Upon information and belief, the District's principal headquarters are located at 25 Corporate Park Drive, Hopewell Junction, Dutchess County, New York.

4.      From April 2011 to September 2013, the acts and occurrences complained of herein took place at Van Wyck Junior High School (the "Junior High School"), 6 Hillside Lake Road, Wappingers Falls, Dutchess County, New York 12590, which Junior High School is part of the District.

5.      From September 2013 to the present day, the acts and occurrences complained of herein took place at Myers Corners Elementary School located in Wappingers Falls, Dutchess County, New York 12590, which school is part of the District.

6.      During the time period of April 2011 until September 2013, when Plaintiff was employed at the Junior High School, Plaintiff's direct supervisors were Defendants Catherine DeFazio and Thomas Giorno, who each held the position of "Head Custodian" during the relevant time period.

7.      At all times relevant herein, Defendant Joanne Sereda was the District's Director of Human Resources and Title IX Coordinator.

8.      During the relevant time period that Plaintiff was employed at the District and to the present day, Defendant Ronald Broas was employed as the Director of Facilities and Operations at the District.

9.      Upon information and belief, Defendant Catherine DeFazio (hereinafter "Defendant DeFazio" or "DeFazio") is a resident of the Town of Wappingers, County of Dutchess, State of New York.

10.     Upon information and belief, Defendant Thomas Giorno (hereinafter "Defendant Giorno" or "Giorno") is a resident of Town of Wappingers Falls, County of Dutchess, State of New York.

11.     Upon information and belief, Defendant Joanne Sereda (hereinafter "Defendant Sereda" or "Sereda") is a resident of the City of Beacon, County of Dutchess, State of New York.

12.     Upon information and belief, Defendant Ronald Broas (hereinafter "Defendant Broas" or "Broas") is a resident of the City of Middletown, County of Orange, State of New York.

13.     Defendants DeFazio, Giorno, Sereda, Broas, and the District are collectively referred to herein as the "Defendants."

## JURISDICTION AND VENUE

14.     Jurisdiction is appropriate under 28 USC §1331 as this action pertains to violations of Federal Law, to wit, Title VII of the Civil Rights Act of 1964 located at 42 USC § 2000e *et. seq.*, and Section 1983 of the Civil Rights Act located at 42 USC §1983, as well as violations of New York State Human Rights Law §296 *et seq.*, which can be heard by this Court pursuant to 28 USC §1367.

15.     Venue is based on the place of business of the Defendants and the place where the acts and occurrences complained of herein occurred, and is appropriate in this District pursuant to 28 USC §§ 112(b) & 1391(b).

## STATEMENT OF FACTS

### Employment with the District

16.     Plaintiff is a Caucasian male, 41 years of age.

17.     Plaintiff was initially hired by the District on October 18, 2006, in the position of full-time custodian at the Fishkill Plains Elementary School, located at 17 Lake Walton Road, Wappingers Falls, New York, which school was part of the District.

18.     From October 2006 through May 2011, Plaintiff was never written-up or disciplined in any fashion.

19.     In or about May 2011, Plaintiff requested to be transferred and he was transferred to another school, namely the Junior High School, where he remained until September 2013.

20.     In September 2013, Plaintiff was promoted to the position of Head Custodian at Myers Corners Elementary School, also within the District.  Upon information and belief, this promotion was effectuated in an effort to avoid liability on the present claims.

21.     While Plaintiff was employed as a custodian for the District, he was paid a salary of approximately $52,000.00 per year, with the opportunity for additional pay for overtime hours worked.

22.     Upon transferring to the Junior High School in 2011, Defendant DeFazio became Plaintiff's immediate superior with the title of Head Custodian.

23.     From approximately July 2013 through approximately September 2013, Defendant Giorno was Plaintiff's immediate superior with the title of Head Custodian.

**Sexual Harassment and Hostile Work Environment**

24.     Within several weeks of starting work at the Junior High School, Plaintiff started being sexually harassed by his supervisor, Defendant DeFazio.

25.     The instances of sexual harassment are too numerous to list here, but the most egregious will be plead with specificity.

26.     In or around June of 2011, Defendant DeFazio approached Plaintiff from behind and grabbed his buttocks.  Defendant DeFazio cheered "Woohoo!"  She then walked away.  This was the first of dozens of similar incidents that occurred between June of 2011 and August 14, 2012.

27.     In or around late July or early August of 2011, Plaintiff was in the custodians' office.  Plaintiff was standing up and was bent over at the waist while changing his motorcycle boots, in preparation for leaving work and driving home. Defendant DeFazio approached Plaintiff from behind, grabbed his hips, and began thrusting and gyrating her pelvis on his buttocks.  Plaintiff told Defendant DeFazio to stop.

28.     Plaintiff cannot recall with specificity every single incident when Defendant DeFazio grabbed or pinched his buttocks, because it was such a regular occurrence.  However, he specifically recalls that, in addition to the two incidents described above, Defendant DeFazio grabbed and pinched his buttocks at least several dozen times between April of 2011 and August 14, 2012.  Plaintiff regularly asked his supervisor to stop grabbing and pinching his buttocks.

29.     In addition to regularly grabbing and pinching Plaintiff's buttocks, Defendant DeFazio regularly made inappropriate sexual remarks at the Junior High School, during work hours, and in Plaintiff's presence, many of which were specifically directed at Plaintiff.

30.     Plaintiff does not recall the specific date, but he specifically recalls Defendant DeFazio stating "I (Ms. DeFazio) should have been a man because I like sex so much."

31.     Plaintiff does not recall the specific date, but he specifically recalls Defendant DeFazio stating to another District employee (John Galloway), who was subordinate to her, in his presence: "did your wife ever use a vibrator on you?"

32.     Plaintiff does not recall with specificity every single incident that Defendant DeFazio made inappropriate remarks of a sexual nature, because it was such a regular occurrence.

33.     However, Plaintiff avers that in addition to the incidents described above, DeFazio made inappropriate remarks of a sexual nature in his presence at least several dozen times between April of 2011 and August 2012, many of which were directed at Plaintiff.

34.     Plaintiff regularly had to ask his supervisor to stop making sexual comments towards him.

35.     Another incident of sexual harassment occurred on or around August 14, 2012, when Defendant DeFazio visited Plaintiff's wife's store, "Scrub Street USA," located in Lagrangeville, New York.

36.     At that time Defendant DeFazio, in front of Plaintiff's wife, said to Plaintiff something to the effect of: "you should get a stripper pole" and "you should dance on a pole."

37.     Plaintiff understood Defendant DeFazio's comments to be in the nature of comparing Plaintiff to an exotic dancer or stripper.

38.     Defendant DeFazio then stated to Plaintiff's wife something to the effect of: "you can dance on Mike's pole" or "you should dance on Mike's pole."  Plaintiff understood DeFazio's statement to be a reference to his penis.  Defendant DeFazio then grabbed Plaintiff's buttocks in front of his wife.

39.     At that time, Plaintiff forcefully told Defendant DeFazio to stop touching him and to never make those kinds of comments to him again.

40.     This incident in front of his wife embarrassed Plaintiff and his face became flushed and turned red, at which point Defendant DeFazio said to Plaintiff's wife: "he does that every time I say something."

41.     The August 14, 2012, incident with DeFazio, his supervisor, was extremely upsetting and humiliating for both Plaintiff and his wife.

6

42.     Another example of Defendant DeFazio's creation of a sexually hostile work environment is when DeFazio hung a birthday card depicting a near-naked man in a sexually provocative pose in the custodian's office for all to see.  This card was visible to Plaintiff and the other male custodians and remained hanging there for two years or more.

43.     Plaintiff has also witnessed, on several occasions, Defendant DeFazio inappropriately touching his co-workers.

44.     One example occurred in or around September 2011 when the custodial department was gathered to take a group photo for the yearbook.

45.     At that time, Plaintiff witnessed Defendant DeFazio pinch the buttocks of his co-worker, custodian Samuel Feiler.  Mr. Feiler appeared shocked and embarrassed by the incident, and told Defendant DeFazio to stop.

46.     Defendant DeFazio's inappropriate touching of, and sexually explicit and suggestive comments towards, Plaintiff and his co-workers were a regularly occurring pattern of conduct that caused him and his male co-workers in the custodial/maintenance department substantial embarrassment and discomfort to the point of making the workplace unbearable.

47.     Plaintiff regularly told Defendant DeFazio to stop when she would touch and pinch his buttocks or make sexually explicit or suggestive statements towards him, but she would not stop, until Plaintiff forcefully demanded she stop after the August 14, 2012 incident.

48.     Defendant DeFazio's touching of Plaintiff's buttocks and making of sexually explicit or suggestive statements were, at a minimum, weekly occurrences.

**Retaliation**

49.     After August 14, 2012, when Plaintiff forcefully told Defendant DeFazio to never again touch him or speak to him in that manner, the quality of his work environment

immediately changed for the worse and his work performance was suddenly subject to heightened scrutiny.

50.    Prior to August 14, 2012, Defendant DeFazio never yelled at Plaintiff or complained about the quality of his work.

51.    After August 14, 2012, Defendant DeFazio started berating Plaintiff, in the presence of co-workers and in an attempt to embarrass and humiliate him, and complaining about the quality of his work, on a regular basis.

52.    Prior to August 14, 2012, Defendant DeFazio regularly offered Plaintiff the opportunity to work overtime hours, which provided him with an extra $10,000 to $15,000 per year, on top of his annual salary, during his first year at the Junior High School (April 2011 to April 2012).

53.    After August 14, 2012, Plaintiff received offers to work overtime hours from Defendant DeFazio very rarely.

54.    Upon information and belief, the overtime hours that Plaintiff used to be offered started being offered to a different custodian, Juan Uribe, who is friendly with Defendant DeFazio and has never complained about her sexual abuse in the workplace.

55.    Around that time, Plaintiff's regular work hours were 2:00 p.m. to 10:30 p.m.

56.    Prior to August 14, 2012, Plaintiff would regularly receive telephone calls from the Junior High School at 8:00 a.m. or later asking him to work an overtime shift beginning at 10:00 a.m.

57.    After August 14, 2012, on those few occasions when Defendant DeFazio did offer Plaintiff the opportunity to work overtime, he suddenly started received calls from the Junior High School at 6:30 a.m. or earlier to work overtime starting at 10:00 a.m.

58.     These early telephone calls, received only 7.5 to 8 hours after finishing the prior day's work, were a noticeable and vexatious deviation from the calls that Plaintiff used to receive at 8:00 a.m.

59.     The acts of retaliation that Plaintiff was subjected to, and continues to be subject to, are too numerous to list here.

60.     On February 21, 2013, Plaintiff and his co-workers Samuel Feiler, John Galloway, and Angelo DiGregorio, made a formal complaint about the sexual harassment and hostile work environment created by Defendant DeFazio to the District's Director of Facilities and Operations, Defendant Ronald Broas.

61.     Plaintiff did not make a formal complaint sooner because: 1) he was afraid to lose his job and believed that Defendant DeFazio had the power to fire him; 2) he was concerned that he would suffer more severe retaliation from Defendant DeFazio and her supporters, who had the power to cut his overtime hours and make his work life even more miserable; and 3)  he thought it was fruitless because he had reported the matter to his union representative and president in or around September of 2012 , and nothing had been done.

62.     At all relevant times herein, Defendant Broas was Defendant DeFazio's immediate supervisor.

63.     Defendant Broas told Plaintiff and his co-workers that he would immediately bring the issue to the attention of Human Resources, and advised them not to talk about the issues surrounding the complaint with anyone.

64.     Upon information and belief, on or around February 21, 2013, Defendant Broas reported Plaintiff and his co-workers' complaint to District employee Joanne Sereda, who was employed as the District's Human Resources Director and Title IX Coordinator.

65.     Upon information and belief, Defendants did not take all steps necessary to prevent the sexual harassment or retaliation from occurring or continuing.

66.     Upon information and belief, Defendants failed to express strong disapproval for sexual harassment and retaliation or to develop appropriate sanctions for perpetrators.

67.     After Plaintiff complained about his supervisor's conduct to Defendant Broas, the quality of Plaintiff's work environment further deteriorated.

68.     After February 21, 2013, Plaintiff's work performance was subject to even more heightened scrutiny.

69.     Prior to February 21, 2013, Plaintiff had never received a write-up or had any disciplinary action taken against him.

70.     After February 21, 2013, Plaintiff started receiving written memoranda from the District which stated that Defendant DeFazio had complained to her supervisors about the quality of his and his coworkers' (the ones who had complained) work.

71.     After February 21, 2013, Plaintiff began hearing from co-workers that Defendant DeFazio was complaining to other supervisors and employees of the Junior High School about him and his co-worker Samuel Feiler by stating that they were "causing problems," "didn't do their jobs," and were "troublemakers."

72.     This had an impact on Plaintiff's ability to work well with the rest of the custodial staff.

73.     After February 21, 2013, Plaintiff also became aware that one of the supervisors that had hired him, Jeffrey Estremera, was developing a poor opinion of him given Defendant DeFazio's comments about his work performance and work ethic.

74.     After February 21, 2013, Plaintiff and the other custodians that had complained about DeFazio started receiving more physically strenuous and less desirable job duties than the custodians that did not complain, such as custodians Mel Johnson and Juan Uribe.

75.     Upon information and belief, after February 21, 2013, custodians Mel Johnson and Juan Uribe were given light cleaning tasks and were charged with maintaining very small areas of the school, whereas Plaintiff and the complaining custodians were assigned tasks such as painting and moving furniture in addition to their regular cleaning and maintenance duties.

76.     Upon information and belief and in contravention to the District's policy on sexual harassment, the District and Defendants Sereda and Broas did not take any action related to Plaintiff and his co-workers' February 21st complaint until March 14, 2013, at the earliest.

77.     On or about April 8, 2013, during a meeting of the custodial/maintenance department, Plaintiff was seated at a chair when Defendant DeFazio approached him from behind, lifted up her arms and clasped her hands together, which caused her shirt to lift up and expose her stomach, and started dancing behind Plaintiff in a gloating and mocking manner with her exposed stomach in close proximity to his head until he stood up and left the room. Defendant DeFazio then walked away from Plaintiff and started laughing along with custodian Juan Uribe.

78.     This incident left Plaintiff with the impression that the purpose of Defendant DeFazio's gyrating dance was to let Plaintiff and his co-workers know that she knew of their complaint, was not being disciplined as a result, and that she would continue to act that way if she wanted to.

79.     After the April 8th incident, Plaintiff requested and received an alteration to his work hours in order to avoid DeFazio and her continued acts of harassment and retaliation, as it was obvious to him that the District was not going to take any action to protect him.

80.     Absent DeFazio's abuse, Plaintiff would not have altered his hours each day as the alternate schedule was much less convenient for him.

81.     Another instance of retaliation occurred on or around May 3, 2013, during a Junior High School event for the National Junior Honor Society.

82.     The Junior High School was full of students, parents, employees, and school board members on that night.

83.     Upon information and belief, Defendant DeFazio chose that evening to contact New York State Troopers regarding alleged vandalism that had occurred to her car and she reported to police that Plaintiff and the other custodians who had complained about her, had committed the vandalism.

84.     Upon information and belief, the New York State Trooper went to the Junior High School that evening and interviewed Plaintiff and his co-workers but found that the alleged damage to DeFazio's car was a bent windshield wiper that appeared to be damaged as a result of normal wear and tear and that there was no evidence of vandalism.

85.     Upon information and belief, the New York State Troopers were sent by DeFazio to interview Plaintiff and his co-workers on that very night in order to intimidate, humiliate, and harass Plaintiff and the co-workers that had complained about her abuse.

86.     On May 6, 2013, Defendant Sereda called a meeting of the custodial/maintenance department.

87.     At that time, Defendant Sereda told Plaintiff and his co-workers that Defendant DeFazio had volunteered to transfer to an alternate location and would no longer be working at the Junior High School; she stressed the point that Defendant DeFazio voluntarily transferred and was not involuntarily removed from her position.

88.     At that time, Defendant Sereda also stated to Plaintiff and his co-workers that Defendant DeFazio knew about their complaints "from day one."

89.     The retaliation Plaintiff was experiencing continued when Defendant Giorno took over the Head Custodian position at the Junior High School in or around July 2013.

90.     Plaintiff and his co-worker John Galloway had been told by another custodian named Michael Pallazo that Pallazo or Defendant Giorno would be taking over the Head Custodian position with directions from superiors to "clean house" and "take care of the problem" at the Junior High School.

91.     Upon information and belief, at the time that Defendant Giorno began as Head Custodian, he had told custodians at other schools within the District that he was going to the Junior High School to "take care of the virus" and that he was "going to war."

92.     Upon information and belief, Defendant Giorno knew and was friendly with Defendant DeFazio.

93.     Defendant Giorno continued to specifically give the complaining custodians, including Plaintiff, the most arduous and time consuming tasks that could be given to the custodial staff.

94.     When Plaintiff and his co-workers (the ones who had complained about the sexual harassment) questioned Defendant Giorno as to why he was picking them out to do the hardest work and giving the custodians who had not complained about DeFazio the light work,

13

Defendant Giorno replied that "this is what I do," and "why do you think that I was sent? Why me?"

95.     Plaintiff and his co-workers took these statements to mean that the District had decided to send a head custodian that would make their jobs difficult in retaliation for their complaints.

96.     Other examples of Defendant Giorno retaliating against Plaintiff occurred in July 2013 when Giorno gave him the difficult tasks of moving furniture, stripping paint off of large areas of the building, and painting; calling him inefficient, lazy, and incompetent; threatening and screaming at him, and calling Plaintiff "slick" and "smart" in a degrading and sarcastic fashion in the presence of others.

97.     One day in July 2013, Defendant Giorno yelled at Plaintiff and another co-worker who had complained of the sexual harassment and, in the presence of Plaintiff's union president, stated that he was giving Plaintiff and his co-worker the difficult tasks because that's "all they are good for" and that he (Giorno) could give them "all the heavy work" because he (Giorno) was in charge.

98.     Plaintiff was offended by this remark and walked outside, at which point Defendant Giorno followed Plaintiff outside and threatened to "kick [his] ass!"

99.     When Plaintiff made a verbal complaint about this and other incidents to Defendant Sereda, she interrupted him, saying: "Don't talk to me.  I don't care."

100.    In September 2013, Plaintiff was promoted to the position of Head Custodian at Myers Corners Elementary School.

101.    Upon information and belief, this promotion was effectuated in an effort to avoid liability on the present claims.

102.    Although after the promotion Plaintiff no longer had DeFazio or Giorno retaliating against him, the retaliation took on a different form: employees that Plaintiff was supposed to be supervising routinely disrespected him and failed to follow his orders and the District would retaliate against Plaintiff by failing to address and outright ignoring his concerns regarding these employees.

103.    In contrast, if there is ever a question about Plaintiff's job performance or ability to get along with his staff, Plaintiff is immediately asked to attend a meeting with Human Resources and/or his superiors.

104.    For example, in or around August 2013, Plaintiff was wrongly accused by the District of speaking inappropriately to a female co-worker and was threatened that he would not be promoted to the position of head custodian if he did not admit to the incident, take an anger management course on his own time, without pay, and write a letter of apology to the offended employee.

105.    Plaintiff perceived this as retaliation given that he had complained about being spoken to inappropriately before and nothing was ever done about it, but the moment someone accused him of speaking inappropriately to her, Plaintiff was questioned immediately.

106.    Plaintiff also perceived this as an attempt to prevent him from being promoted and/or to get him to admit to wrongdoing as part of the District's plan to develop a negative personnel file on him and, ultimately, to fire him.

107.    During Plaintiff's employment at the District, he has always competently performed his work duties.

108.    During Plaintiff's employment at the District, he has never received a negative performance evaluation.

109.   During Plaintiff's employment at the District he has never received a "write-up" or been subject to any disciplinary action until the one received in August 2013 in retaliation for his complaints about the sexual harassment and retaliation.

110.   Although the District has a sexual harassment policy, it was not followed in this case as:

a. the sexual harassment and retaliation of Plaintiff and his co-workers was allowed to persist unchecked for years;

b. the District knew or should have known (due to its pervasive nature and the complaints of the staff) that the sexual harassment and retaliation was occurring during that time;

c. the District did not timely investigate Plaintiff and his co-workers' complaints as required under the policy;

d. the District did not timely inform Plaintiff or his co-workers the result of the District's investigation as required under the policy;

e. the District failed to suggest mediation as a potential means of resolving the complaint;

f. the District failed to suggest counseling and/or sensitivity training to the harassment and retaliation perpetrators;

g. the District failed to conduct training for the custodial/maintenance department at the Junior High School;

h. the District failed to request a letter of apology from Defendant DeFazio to Plaintiff and the other complainants; and

i. the District did not express strong disapproval for the sexual harassment and retaliation or develop appropriate sanctions for perpetrators.

111.   Upon information and belief, from February 21, 2013, to the present date, the District did not take adequate disciplinary action and/or did not take any disciplinary action whatsoever against Defendants DeFazio or Giorno.

112.   On or about June 14, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission's ("EEOC") office in New York, New York, complaining of the facts detailed above.

113.   On or about December 17, 2013, Plaintiff filed a rebuttal and supplementary statement with the EEOC, complaining of the facts detailed above.

114.   On or about September 29, 2014, the EEOC rendered a determination of probable cause and attempted to conciliate the matter between the parties.

115.   EEOC conciliation failed and, on June 26, 2015, Plaintiff received a Notice of Right to Sue Within 90 Days (the "Notice") letter from the EEOC.

116.   This action is timely as it was filed prior to the lapse of 90 days from the date of receipt of the Notice.

**PLAINTIFF'S FIRST CLAIM FOR RELIEF**
**FOR SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT**

117.   Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "116" above, with the same force and to the same effect as though set forth at length in this Paragraph "117."

118.   Harassment on the basis of sex is a violation of 42 USC §2000e-2, *et seq.*, and 29 CFR 1604.11.

119.    Under federal law, unwelcome sexual advances and verbal or physical conduct of a sexual nature constitute sexual harassment when: a) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; b) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or c) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

120.    The conduct and statements of Defendant DeFazio constitute sexual harassment under federal law and were sufficiently frequent, severe, continuous, and recurring, to alter the conditions of Plaintiff's work environment and to create a hostile or offensive work environment for Plaintiff and his co-workers.

121.    The continuous, recurring, and severe harassment by Plaintiff's immediate supervisor, Defendant DeFazio, was humiliating and unreasonably interfered with Plaintiff's work performance.

122.    The continuous, recurring, and severe harassment by Plaintiff's immediate supervisor, Defendant DeFazio, occurred because of his sex.

123.    The conduct and statements of Defendant DeFazio, as described above, can and should be imputed to the District because they were so frequent and severe that the District knew or should have known of them, particularly after Plaintiff and his co-workers made complaints against DeFazio, and the District did not adequately or timely address DeFazio's blatant violations of the District's sexual harassment policies.

124.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

125.   Therefore, Plaintiff respectfully requests affirmative relief, back pay from lost overtime opportunities, compensatory damages, punitive damages, attorneys' fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
## FOR RETALIATION
## UNDER TITLE VII OF THE CIVIL RIGHTS ACT

126.   Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "125" above, with the same force and to the same effect as though set forth at length in this Paragraph "126."

127.   Title VII of the Civil Rights Act, at 42 USC §2000e-3(a), makes it an unlawful employment practice for an employer to discriminate against any of its employees because the employee has opposed any practice made an unlawful employment practice by Title VII of the Civil Rights Act, or because the employee has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII of the Civil Rights Act.

128.   Defendant DeFazio's physical grabbing of Plaintiff's buttocks on several occasions and her sexually explicit statements and gestures toward Plaintiff and his co-workers described above, constituted harassment on the basis of sex, had the effect of interfering with Plaintiff's work performance, and created an intimidating, hostile, and offensive working environment for Plaintiff.

129.   Plaintiff engaged in protected activity under Title VII of the Civil Rights Act when he verbally demanded that his superior stop grabbing his buttocks and stop speaking to him in a sexually explicit manner, when he made a formal complaint to the District's Director of Facilities and Operations (Defendant Ronald Broas) regarding DeFazio's harassment, and when he filed a complaint with the EEOC, and the District was aware of this protected activity.

130.   When Plaintiff engaged in the protected activity described above, he had a reasonable and good faith belief that the opposed practice, i.e., DeFazio's sexual harassment of him and his co-workers, was unlawful.

131.   Within weeks of Plaintiff's complaints, Defendants retaliated against him by, amongst other things, suddenly subjecting his work to heightened scrutiny, drastically reducing his overtime hours, calling him at unusual times of the early morning when they knew he would be sleeping, giving him more arduous custodial tasks than the other employees who had not complained of the harassment, and setting him up to be disciplined or criminally charged through false accusations.

132.   The retaliatory conduct against Plaintiff and described above continues to this day.

133.   There was a causal connection between the protected activity (i.e., Plaintiff's complaints) and the retaliatory activity against Plaintiff which only began to occur after his complaint to DeFazio in August 2012, and then got worse after his formal complaint against DeFazio in February 2013.

134.   Defendants' retaliatory actions against Plaintiff were done with malice or with a reckless indifference to his federally protected rights.

135.   Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

136.   Therefore, Plaintiff respectfully requests affirmative relief, back pay from lost overtime opportunities, compensatory damages, punitive damages, attorneys' fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF
## FOR SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT
## UNDER NEW YORK STATE HUMAN RIGHTS LAW

137.  Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "136" above, with the same force and to the same effect as though set forth at length in this Paragraph "137."

138.  Section 296(1) of the New York State Human Rights Law makes it an unlawful discriminatory practice for an employer to discriminate against an employee in compensation or in terms, conditions or privileges of employment because of the employee's sex.

139.  Defendants DeFazio's actions and statements directed at Plaintiff and his co-workers, described above, constitute sexual harassment under Section 296 of the NYS Human Rights Law and together created a sexually hostile work environment for Plaintiff under the same statute.

140.  Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

141.  Therefore, Plaintiff respectfully requests affirmative relief, back pay from lost overtime opportunities, compensatory damages, costs and disbursements, and such other and further relief that this Court deems just and proper.

## PLAINTIFF'S FOURTH CLAIM FOR RELIEF
## FOR RETALIATION
## UNDER NEW YORK STATE HUMAN RIGHTS LAW

142.  Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "141" above, with the same force and to the same effect as though set forth at length in this Paragraph "142."

143.    Sections 296(1)(e) and (7) of the New York State Human Rights Law make it an unlawful discriminatory practice for an employer to discriminate against an employee because said employee has opposed discrimination based on sex, sexual harassment, or the creation of a sexually hostile work environment through the filing of a complaint or providing testimony or assistance in any proceeding under the statute.

144.    Plaintiff opposed discrimination based on sex, sexual harassment, or the creation of a sexually hostile work environment when he demanded that his supervisor stop grabbing his buttocks and speaking to him in a sexually explicit manner, when he made a formal complaint to the District's Director of Facilities and Operations (Defendant Ronald Broas) regarding DeFazio's harassment, and when he filed a complaint with the EEOC.

145.    When Plaintiff made his complaints, he had a reasonable and good faith belief that the opposed practice, i.e., DeFazio's sexual harassment of him and his co-workers, was unlawful.

146.    Within weeks of Plaintiff's complaints as detailed above, Defendants retaliated against him by, amongst other things, suddenly subjecting his work to heightened scrutiny, drastically reducing his overtime hours, calling him at unusual times of the early morning when they knew he would be sleeping, giving him more arduous custodial tasks than the other employees who had not complained of the harassment, and setting him up to be disciplined or criminally charged through false accusations.

147.    The retaliatory conduct against Plaintiff and described above continues to this day.

148.    There was a causal connection between the protected activity (i.e., Plaintiff's complaints) and the retaliatory activity against Plaintiff which only began to occur after his formal complaint against DeFazio in February 2013.

149.    Defendants' retaliatory actions against Plaintiff were done with malice or with a reckless indifference to his federally protected rights.

150.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

151.    Therefore, Plaintiff respectfully requests affirmative relief, back pay from lost overtime opportunities, compensatory damages, costs and disbursements, and such other and further relief that this Court deems just and proper.

## PLAINTIFF'S FIFTH CLAIM FOR RELIEF
## FOR AIDING AND ABETTING
## UNDER NEW YORK STATE HUMAN RIGHTS LAW

152.    Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "151" above, with the same force and to the same effect as though set forth at length in this Paragraph "152."

153.    Pursuant to the statements, actions, and in some cases inaction, of Defendants DeFazio, Giorno, Sereda, and Broas, as set forth and described above, Defendants DeFazio, Giorno, Sereda, and Broas acted to aid and abet the discriminatory actions of the District, in violation of the New York State Human Rights Law § 296(6).

154.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

155.    Therefore, Plaintiff respectfully requests affirmative relief, back pay from lost overtime opportunities, compensatory damages, costs and disbursements, and such other and further relief that this Court deems just and proper.

**PLAINTIFF'S SIXTH CLAIM FOR RELIEF
FOR VIOLATION OF
SECTION 1983 OF THE CIVIL RIGHTS ACT**

156.    Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "155" above, with the same force and to the same effect as though set forth at length in this Paragraph "156."

157.    By reason of the foregoing, Defendants' discriminatory treatment of Plaintiff was a violation of 42 USC §1983.

158.    As a result thereof, Plaintiff suffered various severe injuries and damages.

159.    By reason thereof, Plaintiff is entitled, but not limited to, back pay, compensatory damages, damages for emotional distress, attorneys' fees, costs and disbursements or any other remedy to which the Court may deem just and proper.

160.    Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendants' employees and Defendants to undergo sexual harassment, discrimination, and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages; attorneys' fees; costs and disbursements.

161.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

162.   By reason of the Defendants' conduct, Plaintiff is entitled to compensatory damages, punitive damages, damages for emotional distress, costs and disbursements, and such other and further relief that this Court deems just and proper.

## JURY DEMAND

163.   Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff prays that this Honorable Court:

a.   Accept jurisdiction over this matter;

b.   Empanel a jury to fairly hear and decide this matter;

c.   Award Plaintiff back pay and front pay;

d.   Award Plaintiff compensatory damages sustained as a result of Defendants' discriminatory practices;

e.   Award Plaintiff punitive damages for Defendants' willful and outrageous conduct;

f.   Award Plaintiff damages against the individual Defendants for their aider and abettor liability under the New York State Human Rights Law;

g.   Award Plaintiff reasonable attorneys' fees;

h.   Award Plaintiff costs and disbursements of this action; and

i.   Award any other relief deemed just and proper.

Dated: Walden, New York
September 18, 2015

JENNIFER S. ECHEVARRIA (JE – 5544)
Jacobowitz & Gubits, LLP
Attorneys for Plaintiff
158 Orange Avenue
P.O. Box 367
Walden, New York 12586
(T) 845-778-2121

## VERIFICATION

STATE OF NEW YORK            )
                            ) SS.:
COUNTY OF ORANGE            )

Michael Murphy, being duly sworn says:

I am the Plaintiff in the action herein.

I have read the annexed Complaint dated September 18, 2015, know the contents thereof and the same are true  to my knowledge, except those matters therein which are to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
Michael Murphy

Sworn to before me this
18 day of September, 2015.

_____
NOTARY PUBLIC

JENNIFER S. ECHEVARRIA
Notary Public, State of New York
No. 02EC6265405
Qualified in Orange County
My Commission Expires July 9, 20 16