UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL MURPHY,                                    :
                                                   :
                         Plaintiff,                :
                                                   :
                                                   :          **OPINION AND ORDER**
   v.                                              :
                                                   :          15 CV 7460 (VB)
WAPPINGERS CENTRAL SCHOOL                           :
DISTRICT, CATHERINE DEFAZIO, as                    :
Head Custodian of Van Wyck Junior High             :
School and Individually, THOMAS GIORNO             :
as Head Custodian of Van Wyck Junior High          :
School and Individually, JOANNE SEREDA             :
as Director of Human Resources/Title IX            :
Coordinator and Individually, and RONALD           :
BROAS as Director of Facilities and                :
Operations and Individually, for aider and         :
abetter liability,                                 :
                                                   :
                         Defendants.               :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Michael Murphy brings this employment discrimination case against defendants

Wappingers Central School District (the "District"), Thomas Giorno, Joanne Sereda, and Ronald

Broas (collectively, the "District defendants"), and Catherine DeFazio, alleging they violated his

rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human

Rights Law ("NYSHRL"), and 42 U.S.C. § 1983.

Now pending before the Court are two motions for summary judgment filed separately by

DeFazio and the District defendants. (Docs. ##82, 85).

For the following reasons, the District defendants' motion is GRANTED IN PART and

DENIED IN PART.

DeFazio's motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

1

# BACKGROUND

Drawing all permissible inferences in plaintiff's favor, the following is a summary of the relevant facts based on the parties' briefs, statements of fact ("SOF"), and affirmations ("Aff.") with supporting exhibits.

I.     Plaintiff's and DeFazio's Jobs

Plaintiff began working for the District in October 2006, as a custodian at Fishkill Plains Elementary School.  In April or May 2011, plaintiff transferred to Van Wyck Junior High School ("Van Wyck"), where he was a third shift custodian.

At that time, defendant DeFazio was Van Wyck's head custodian.  As head custodian, DeFazio's only supervisory responsibility was to "oversee[] custodians at . . . her building." (District Defs. Ex. BB).  Each of Van Wyck's custodians had a designated area which they were responsible for maintaining.  As head custodian, DeFazio was responsible for her own designated area, and assigned the other custodians tasks to perform within their designated areas. If Van Wyck's custodians failed to perform their duties, DeFazio reported them to the "custodial supervisor." (Echevarria Aff. Ex. D at 145).  DeFazio did not set the schedule for Van Wyck's custodians, or make hiring or firing decisions.

Plaintiff contends DeFazio controlled overtime hours offered to Van Wyck's custodians, but Van Wyck had a system for assigning overtime.  A head custodian could not "assign overtime work absent approval from a supervisor at the District's Facilities Department." (Broas Aff. ¶ 20).  Approved overtime first was offered to the most senior member of the custodial staff. If that person declined the hours, it was offered to the other custodians on a rotating basis, or "wheel." (Lefland Aff. Ex. 2 at 43).  However, according to plaintiff, DeFazio could manipulate

the wheel by waiting until the last minute to offer overtime to whomever was next on the rotation.

II.    DeFazio's Alleged Offensive Conduct

In June 2011, DeFazio grabbed plaintiff's buttocks in the custodian's room. Plaintiff responded, "what the hell," and did not speak to DeFazio for the remainder of the day. (Lefland Aff. Ex. 1 at 36).

According to plaintiff, from that time until August 2012, DeFazio touched, pinched, or grabbed plaintiff repeatedly, as often as three times per week, although a few instances in particular stand out.

First, in approximately July 2011, plaintiff was changing into his motorcycle gear after his shift when DeFazio approached him from behind, grabbed his hips, and thrust her pelvis into him. Plaintiff told DeFazio to "get the fuck off" of him. (Lefland Aff. Ex. 1 at 46).

Next, in August 2011, while the custodial staff was being photographed for the Van Wyck yearbook, DeFazio grabbed the buttocks of another custodian, Sam Feiler.

Finally, in August 2012, plaintiff, DeFazio, and another custodian, Juan Uribe, drove to plaintiff's wife's retail store on a lunch break. DeFazio told plaintiff's wife her store was difficult to see from the road, and suggested she station plaintiff outside "to dance on a pole." (Lefland Aff. Ex. 1 at 55). DeFazio then poked either plaintiff's buttocks or side. Plaintiff called DeFazio an "asshole," and forcefully told her not to touch him again. (Id. at 56).

In addition to touching plaintiff, DeFazio regularly discussed sex and her sexual preferences, and remarked on the appearance of custodians and District staff. DeFazio also kept a card depicting a man in his underwear pinned to the wall in the custodian's room.

After the August 2012 incident at plaintiff's wife's store, DeFazio did not touch plaintiff again, or make sexually offensive comments in his presence. However, on April 8, 2013, DeFazio stood behind plaintiff during a meeting in the custodian's room, lifted her shirt, put her hands on her head, and performed a suggestive "wiggle-dance." (Lefland Aff. Ex. 1 at 57–58).

III.     The District's Sexual Harassment Policy

When plaintiff was hired by the District in September 2006, he acknowledged receipt of the District's sexual harassment policy. Among other things, the policy states: "it is essential that all victims of sexual harassment and persons with knowledge of sexual harassment report the harassment immediately." (District Defs. Ex. E at 1). The policy includes a procedure for reporting sexual harassment, and a complaint form. The policy indicates sexual harassment complaints "should be filed with the Principal or the Title IX coordinator." (Id. at 3).

Plaintiff attended the District's sexual harassment training twice. The first time he attended training was either January 2010 or January 2011. Plaintiff testified he was advised during the training to report sexual harassment to "the appropriate person." (Lefland Aff. Ex. 1 at 15–16).

IV.     The District's Investigation of DeFazio's Conduct

Plaintiff reported DeFazio's offensive conduct to the District on February 21, 2013. Plaintiff did not "feel like telling anybody" about DeFazio's conduct at the time it occurred, because it was "embarrassing." (Lefland Aff. Ex. 2 at 79).

Plaintiff and the other third shift custodians had a meeting with defendant Broas, the District's director of facilities and operations, on February 21, 2013. The meeting was not initiated for the purpose of discussing DeFazio's discriminatory conduct, but plaintiff raised the

issue.  In response, Sam Feiler complained about DeFazio's sex-related commentary, and the instance in which DeFazio grabbed his buttocks.

Broas reported the custodians' complaints to defendant Sereda, the District's director of human resources.  Sereda initiated an investigation, which included interviewing plaintiff, plaintiff's wife, Van Wyck's custodians, two former Van Wyck custodians, and a sixth grade teacher.  Sereda determined there were reasonable grounds to conclude DeFazio's behavior constituted sexual harassment in violation of the District's policies and the law.

Sereda recommended a course of disciplinary action for DeFazio, including transfer to Myers Corners Elementary School, a five-day suspension, and sexual harassment training.  DeFazio refused to comply.  As a result, in May 2013, DeFazio was demoted from head custodian to custodian, and transferred from Van Wyck.

While Sereda was conducting her investigation, plaintiff reported DeFazio's April 8, 2013, "wiggle-dance."  In response, plaintiff's schedule was adjusted to avoid any contact with DeFazio.

V.      Alleged Retaliatory Conduct

According to plaintiff, after the August 2012 incident at his wife's store, DeFazio's behavior toward him changed in several ways.

First, DeFazio was unfairly critical of his work.  DeFazio filed written complaints with District executives regarding plaintiff and the other third shift custodians on January 12, January 24, March 20, and April 1, 2013.

Second, DeFazio assigned him more strenuous and less desirable tasks than other custodians were assigned.

Third, DeFazio reduced the overtime work offered to plaintiff, and increased the overtime offered to another custodian, Juan Uribe. In March or April 2013, plaintiff removed his name from the overtime availability list because overtime was "getting played around so much." (Lefland Aff. Ex. 1 at 77).

Finally, in April or May 2013, DeFazio reported to the state police that the third shift custodians had vandalized her car. DeFazio's vandalism complaint was found unsubstantiated.

Plaintiff asserts defendants Giorno and Sereda engaged in retaliatory conduct as well.

Giorno replaced DeFazio as Van Wyck's head custodian in July 2013. According to plaintiff, Giorno told another custodian he came to Van Wyck "to clean up and get rid of the virus," which plaintiff took to mean get rid of plaintiff. (Lefland Aff. Ex. 1 at 102). Plaintiff alleges Giorno assigned plaintiff undesirable tasks, was unfairly critical of plaintiff's work, and was generally rude and abrasive. According to plaintiff, after a disagreement in a custodians' meeting, Giorno chased plaintiff, "saying something about kicking [his] ass." (Lefland Aff. Ex. 1 at 90).

In September 2013, plaintiff was promoted to the position of head custodian at Myers Corners Elementary School. Prior to his promotion, plaintiff was required to apologize in writing to a bus driver to whom he made an explicit remark, and to attend anger management classes. According to plaintiff, Sereda required him to acknowledge his behavior and write the apology so she "could come back after" him at any time. (Lefland Aff. Ex. 2 at 106). Plaintiff also testified that if he complains about his colleagues, human resources and Sereda are slow to respond, but they respond very quickly if anyone complains about plaintiff.

VI.     Procedural Background

On June 17, 2013, plaintiff filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC").  The charge included allegations substantially similar to

those currently before the Court.

On June 26, 2015, plaintiff received a right to sue letter from the EEOC, and on

September 21, 2015, plaintiff commenced this action.

**DISCUSSION**

I.     Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing

law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether

there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.

2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine

issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.

2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citation omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

III.    Claims Against the District

A.      Hostile Work Environment

Plaintiff asserts hostile work environment claims against the District pursuant to Title VII

and the NYSHRL.[1]

The District argues DeFazio's actions (i) do not amount to a hostile work environment,

and (ii) in any event, cannot be imputed to the District.

The Court disagrees with the first argument, but agrees with the second.

1.      Evidence of Hostile Work Environment

First, a reasonable jury could find DeFazio's conduct toward plaintiff amounted to a

hostile work environment.

To establish a hostile work environment claim under Title VII or the NYSHRL, "a

plaintiff must produce enough evidence to show that the workplace is permeated with

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment." Rivera

v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation

omitted).[2]  The standard has objective and subjective elements: "the conduct complained of must

be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the

victim must subjectively perceive the work environment to be abusive." Raspardo v. Carlone,

770 F.3d 97, 114 (2d Cir. 2014).  "Whether a reasonable person would find a given work

---

[1]      Plaintiff also asserts a claim pursuant to 42 U.S.C. § 1983.  Section 1983 claims may not
"be brought to vindicate rights conferred only by a statute that contains its own structure for
private enforcement, such as Title VII." Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 225
(2d Cir. 2004).  Because plaintiff's Section 1983 claim does not seek to vindicate any rights
other than those conferred by Title VII, the Section 1983 claim is dismissed.

[2]      "Hostile work environment claims under Title VII and the NYSHRL are governed by the
same standard." Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015).

environment to be hostile depends on the totality of the circumstances; [c]onsiderations include: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004) (internal quotation omitted).

Here, plaintiff testified that between June 2011 and August 2012 DeFazio touched, pinched, or grabbed him multiple times per week, and regularly discussed sex and her sexual preferences. In addition, on April 8, 2013, DeFazio stood behind plaintiff, lifted her shirt, put her hands on her head, and performed a lewd "wiggle-dance." Plaintiff thus describes multiple, specific instances in which DeFazio's conduct made him "extremely embarrassed and very, very annoyed." (Lefland Aff. Ex. 1 at 46–47). There is no question a reasonable jury could conclude DeFazio's behavior toward plaintiff was severe, pervasive, and physically humiliating, and created an abusive working environment for plaintiff.

The District nevertheless argues these facts fail to establish a hostile work environment because events occurring prior to August 21, 2012, are time-barred.

The Court is not persuaded.

Under Title VII, a plaintiff generally can bring charges based on an employment practice that occurred within 300 days of the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed his EEOC charge on June 17, 2013. (District Defs. Ex. A at 2). Thus, the 300-day period covered by plaintiff's EEOC charge extends back to August 21, 2012.

However, hostile work environment claims involve repeated, separate acts that "collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 117 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)). As such, the

Supreme Court has held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 105.

Here, DeFazio's April 8, 2013, lewd "wiggle-dance" occurred within the statutory time period. A reasonable jury could find DeFazio's "wiggle-dance" contributed to the abusive environment, and thus is part of the same hostile work environment claim as DeFazio's earlier conduct.

### 2. District Liability Pursuant to Title VII

However, the Court concludes a reasonable jury could not impute liability for DeFazio's conduct to the District pursuant to Title VII.

 "The Supreme Court has ruled that employers are not automatically liable for sexual harassment perpetrated by their employees." Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d Cir. 2004) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998)). Instead, "[u]nder Title VII, an employer's liability for such harassment may depend on the status of the harasser." Vance v. Ball State Univ., 570 U.S. 421, 424 (2013).

"If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." Vance v. Ball State Univ., 570 U.S. at 421 (emphasis added). "In cases in which the harasser is a 'supervisor,' however, different rules apply." Id. (Emphasis added). Specifically, "[i]f the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." Id. However, "if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative

11

defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Id. (citing Faragher v. City of Boca Raton, 524 U.S. at 807; Burlington Indus., Inc. v. Ellerth, 524 U.S. at 765) (hereinafter the "Faragher/Ellerth affirmative defense").

i.      Supervisor Under Title VII

An employee is considered a "supervisor" "when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Vance v. Ball State Univ., 570 U.S. at 431 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. at 761). In other words, a supervisor is an individual "'empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control.'" Id. at 440 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. at 762) (emphasis omitted). "[T]he question of supervisor status, when contested, can very often be resolved as a matter of law before trial." Id. at 443.

Plaintiff concedes DeFazio did not have the power to hire or fire him. Further, there is no evidence to suggest DeFazio could demote plaintiff or determine whether to promote him, or give him a raise. Although plaintiff's argument is hardly a model of clarity, he seems to contend DeFazio was his supervisor because she assigned him tasks within his designated maintenance area, could recommend discipline, and could manipulate the overtime system so that he received fewer overtime hours.

Plaintiff's argument is unavailing.

The ability to distribute daily tasks and recommend discipline are not tangible employment actions within the meaning of Title VII.  See, e.g., Travis v. City of Chicago, 2014 WL 4909060, at *12 (S.D.N.Y. Sept. 30, 2014).

Although the ability to control overtime is a closer call, there is no evidence DeFazio was "empowered by" the District to manipulate the system for assigning overtime hours.  Vance v. Ball State Univ., 570 U.S. at 440.  Moreover, plaintiff has not presented evidence suggesting the alleged manipulation amounted to a tangible employment action.  For example, plaintiff presents no evidence regarding how many overtime opportunities DeFazio prevented him from taking, or how the loss of overtime effected his income.  Instead, the evidence indicates plaintiff earned more income during the school year in which he confronted DeFazio, and complained to Broas, than he did in the prior school year, despite having removed himself from the overtime availability list mid-year.

In short, no reasonable jury could find DeFazio was plaintiff's supervisor for Title VII purposes.[3]

Accordingly, to prevail on his Title VII claim, plaintiff must prove the District was negligent in controlling working conditions.  See Vance v. Ball State Univ., 570 U.S. at 421.

ii.  The District's Negligence

There is no evidence to suggest the District was negligent in controlling working conditions.

---

[3]  Thus, the District's reliance on the Faragher/Ellerth affirmative defense is mistaken.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. at 765 (the defense protects an employer from "vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee") (emphasis added).

A plaintiff may show an employer is negligent in controlling working conditions by, for example, failing to "monitor the workplace . . . respond to complaints . . . [or] provide a system for registering complaints," or "effectively discourag[ing] complaints from being filed." <u>Vance v. Ball State Univ.</u>, 570 U.S. at 449.

First, there is no evidence to suggest the District failed to respond to complaints of harassment. To the contrary, it is undisputed that plaintiff did not complain about DeFazio's absuive conduct for more than a year and a half after the conduct began. It is also undisputed that within weeks of plaintiff's complaint, the District undertook an investigation. Following the investigation, the District issued a report finding plaintiff's complaint substantiated, and disciplined DeFazio.

Second, there is no evidence to suggest the District failed to provide a system for registering complaints. Rather, it is undisputed the District maintained a sexual harassment policy which included a detailed complaint procedure, a complaint form, examples of unacceptable conduct, a non-retaliation section, and an explanation of the District's policy toward confidentiality. The evidence also suggests it was the District's practice to distribute the policy to new employees. Indeed, when plaintiff was hired in 2006, he signed a form acknowledging receipt of the policy. Although plaintiff now contends he is not certain he actually received the policy, he testified to knowing the District's policies were available online.

Third, there is no evidence to suggest the District discouraged complaints. Instead, it is undisputed the District held sexual harassment training programs, at which employees were required to register their attendance. Plaintiff attended two such programs, and testified he was advised during training to report sexual harassment to the appropriate person.

Plaintiff alleges he "thought [complaining] was fruitless because he had reported the matter to his union representative and president in or around September of 2012, and nothing had been done." (Compl. ¶ 61; <u>see also</u> Pl. Resp. to District Defs. 56.1 Stmt. ¶ 42). However, plaintiff testified he complained to his union representative in August 2012 about reduced overtime hours, <u>not</u> about DeFazio's discriminatory conduct. (<u>See</u>, <u>e.g.</u>, Lefland Aff. Ex. 2 at 77–79).

Based on the foregoing, the Court concludes no reasonable jury could find the District was negligent in controlling working conditions.

Accordingly, summary judgment is granted with respect to plaintiff's Title VII hostile work environment claim against the District.

### 3. District Liability Pursuant to the NYSHRL

Under the NYSHRL, an employer is only liable for discriminatory conduct that it encouraged, condoned, or expressly or impliedly approved. <u>See</u> <u>Human Rights ex rel. Greene v. St. Elizabeth's Hosp.</u>, 66 N.Y.2d 684, 687 (1985).

Plaintiff relies on the complaints of two former Van Wyck custodians, Donald Maul and Mary Lasorsa, as evidence that the District condoned DeFazio's conduct. However, Maul and Lasorsa complained that DeFazio was rude, unprofessional, and unfairly critical, not that she was discriminatory. (<u>See</u> Maul Aff. ¶¶ 7–8; Lasorsa Aff. ¶¶ 6–8). Because plaintiff has submitted no evidence to suggest the District encouraged, condoned, or approved of DeFazio's discriminatory conduct, it is not liable under the NYSHRL.

Accordingly, summary judgment is granted with respect to plaintiff's NYSHRL hostile work environment claim against the District.

B.     Retaliation

Plaintiff asserts retaliation claims against the District pursuant to Title VII and the NYSHRL.

The District argues plaintiff's retaliation claim is without merit, because he cannot, as a matter of law, establish a materially adverse action or causation.

The Court disagrees.

Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  To establish a prima facie case of retaliation under Title VII or the NYSHRL, "an employee must show that (1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012).

The District first argues the instances of retaliatory conduct plaintiff relies on to support his claim are insufficiently adverse.  However, for the purpose of retaliation claims, the materially adverse action element "is not limited to discriminatory actions that affect the terms and conditions of employment."  Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006).  Instead, it is understood to "appl[y] broadly to 'employer actions that would have been materially adverse to a reasonable employee or job applicant.'"  Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. at 57).  "Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Id.

(quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. at 57).  In addition, "alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable."  Id. (internal quotation omitted).

Plaintiff testified that after the August 2012 incident at his wife's store, he was offered fewer overtime hours, lesser quality job assignments, and more strenuous job assignments. Plaintiff also testified DeFazio unfairly scrutinized his work, made unwarranted complaints about the quality of his work, and filed a complaint with the New York state police alleging plaintiff vandalized her car.  Although it is a close call, supported by little evidence aside from plaintiff's testimony, a reasonable jury could conclude DeFazio's actions, in the aggregate, would dissuade a worker from making a charge of discrimination; in other words, that they were materially adverse.

The District next contends plaintiff, as a matter of law, cannot establish causation because many of DeFazio's adverse actions predated plaintiff's February 21, 2013, complaint to Broas.  This argument is unavailing, because it ignores plaintiff's August 2012 confrontation with DeFazio.  "Close temporal proximity is enough to establish causation at the prima facie stage."  Vogel v. CA, Inc., 662 F. App'x 72, 77 (2d Cir. 2016).  Thus, plaintiff's testimony that DeFazio began treating him differently shortly after August 2012 is sufficient to establish causation.

Accordingly, summary judgment is denied with respect to plaintiff's Title VII and NYSHRL retaliation claims against the District.

IV.     Claims Against the Individual Defendants

Plaintiff asserts sexual harassment, retaliation, and aiding and abetting claims against

defendants Broas, DeFazio, Giorno, and Sereda pursuant to the NYSHRL.[4]

The NYSHRL allows for individual liability if the defendant (i) has an "ownership

interest" in the employer or the authority to "hire or fire" employees, Tomka v. Seiler Corp., 66

F.3d at 1317, abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742; or

(ii) aided or abetted conduct giving rise to a claim of discrimination.  N.Y. Exec. Law § 296(6).

The Court addresses plaintiff's claims against each defendant in turn.

A.     Broas

With regard to Broas, there is some evidence he had the ability to hire or fire employees.

However, there is no evidence to suggest he aided or abetted DeFazio's conduct, or engaged in

conduct that would constitute sexual harassment or retaliation.  Therefore, summary judgment is

warranted as to Broas.

B.     DeFazio

With regard to DeFazio, there is no evidence to suggest she had an ownership interest in

the District, or the ability to hire or fire employees.  In addition, an individual cannot aid and

abet her own violation of the NYSHRL.  See Hardwick v. Auriemma, 116 A.D.3d 465, 468 (1st

Dep't 2014) ("Since it is alleged that [defendant's] own actions give rise to the discrimination

claim, he cannot also be held liable for aiding and abetting.").  Therefore, summary judgment is

warranted as to DeFazio.

---

[4]     Plaintiff does not assert claims against the individual defendants pursuant to Title VII,
nor could he.  See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual
defendants with supervisory control over a plaintiff may not be held personally liable under Title
VII"), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742.

C.    Giorno

With regard to Giorno, there is no evidence to suggest he had an ownership interest in the District, or the ability to hire or fire employees.  There is also no evidence to suggest he aided or abetted DeFazio's conduct, or engaged in conduct that would constitute sexual harassment or retaliation.

Plaintiff seems to contend Giorno's rough treatment and threats aided and abetted DeFazio's retaliatory conduct.  However, "empty verbal threats," while perhaps unprofessional, "are not materially adverse actions, where they are unsupported by any other actions."  Vazquez v. Southside United Hous. Dev. Fund Corp., 2009 WL 2596490, at *12 (E.D.N.Y. Aug. 21, 2009).  Because there is no evidence to suggest Giorno's verbal threats were accompanied by other actions, summary judgment is warranted as to Giorno.

D.    Sereda

With regard to Sereda, there is some evidence she had the ability to hire or fire employees.  However, there is no evidence to suggest she aided or abetted DeFazio's conduct, or engaged in conduct that would constitute sexual harassment or retaliation.

Plaintiff seems to contend Sereda's investigation of plaintiff's allegedly lewd remark to a bus driver was undertaken with retaliatory intent.  That investigation took place in August 2013.  Thus, it is too remote in time from plaintiff's protected activity to allow for an inference of causation.  See Murray v. Visiting Nurse Services of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation").

Plaintiff also contends Sereda responded slowly to his complaints regarding District employees unrelated to this case. There is no evidence to suggest Sereda's allegedly slow responses are anything more than the type of "[p]etty slights or minor annoyances that often take place at work and that all employees experience." Hicks v. Baines, 593 F.3d at 165.

Therefore, summary judgment is warranted as to Sereda.

## CONCLUSION

The District defendants' motion for summary judgment is GRANTED as to plaintiff's (i) Title VII and NYSHRL discrimination claims against the District, (ii) claim pursuant to 42 U.S.C. § 1983, and (iii) NYSHRL discrimination and retaliation claims against the individual defendants.

The District's motion for summary judgment as to plaintiff's retaliation claims under Title VII and the NYSHRL is DENIED. Those claims shall proceed.

DeFazio's motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the pending motions. (Docs. ##82, 85).

The Clerk is further instructed to terminate defendants Catherine DeFazio, Thomas Giorno, Joanne Sereda, and Ronald Broas.

Counsel for plaintiff and the District are directed to appear at a status conference on May 18, 2018, at 9:45 a.m., at which time the Court will set a trial date and a schedule for pretrial submissions.

By May 16, 2018, the parties shall submit a Joint Pretrial Order in accordance with the

Court's Individual Practices.

Dated:  April 16, 2018
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge